The next matter, number 25-1079, United States v. Joan Rosado Maldonado. At this time, would counsel to the appellant please come to the podium and introduce herself on the record. Good morning, Your Honors. May it please the Court. My name is Sarah Varney, and I represent the appellant Joan Rosado Maldonado in this matter. His appeal originally raised three issues solely relating to his sentencing in this case, but as the government already agreed, actually one of the conditions that we challenged was in fact overbroad. I'll focus today on his two remaining issues. So first is the guideline calculation, which in Mr. Maldonado's case, began with an enhanced base offense level under the same 2K2.1 provision that was just addressed in Fulcar. And that was predicated upon Mr. Maldonado's two prior convictions for what probation and the Court determined were controlled substance offenses. Those two prior convictions were Massachusetts cocaine offenses as defined under Massachusetts law. And the issue in this case is solely which law defines the phrase controlled substance within the meaning of that federal guideline. And a circuit split, as has already been discussed, has arisen on this issue. The District Court found the Third Circuit's decision in Lewis most compelling, but this Court should follow its own reasoning already kind of previewed in Kroko and hold that the phrase controlled substance is to be defined by federal law under the Federal Controlled Substances Act. By that proper limited definition, Mr. Maldonado's prior Massachusetts convictions with a cocaine definition that is overbroad compared to the federal statute would no longer qualify as controlled substances offenses. And second, I'll briefly... The cocaine here, however formulated, it is fair to say it was a controlled substance in just normal speech. Under Massachusetts law, it is. The plain text approach, though, here, I don't think actually resolves the issue because the way to consider controlled substance, if we're going to give it a legal basis, some courts have looked to dictionaries, and that still leaves... It's regulated by law, it still leaves open that which law question, which Judge Gregory in the Fourth Circuit in his dissent did point out, kind of leads to this circular reasoning where you're trying to determine which law, you get a definition that says by law, and it still doesn't answer that fundamental question. Why does that... I mean, if I say apple, and I assume I include Macintosh and Red Delicious, I don't need to say which apples, I just say apple. Why isn't that the same here, particularly where we know from these guidelines that the Commission does know how to make a specific cross-reference? I think all of this comes down to, if you look, as the government has urged, at the context here, at every purpose of the guidelines. Once you actually consider that larger picture, we aren't looking at just a colloquial definition of a term. Here it has some legal significance, and we need to understand what it meant. The definition here is best considered in that broader context where if you look at three separate kind of scaling up levels here. So you look at the guidelines themselves, their purposes and function. Those were all set out by Congress. You look at the categorical approach itself as applied to all federal predicate offenses. And then even if you give consideration to some broader practical and policy implications, what all of those considerations make clear is that federal law, not the law of individual states, needs to define federal sentencing. At the time this came into being, the first iteration of this, and I don't know whether the right way to think about it is, at the time the statute authorizing these guidelines is the right point in time. But do we have any idea of what the state of the world was in the states? In other words, did each state have their own controlled substance regime at that time? But I'm aware that some states had already established, and there are still many states that directly reference the Federal Controlled Substances Act. And that's ultimately something that states are allowed to set their own policies. I'm just trying to understand. So there were states that had it. Massachusetts has what they call itself a controlled substance regime, right? Yes. And they do their own listing? From my recollection, I believe that statute was in effect at the time that the guideline... I know there's different schedules on these controlled substance regimes. So in theory, states could be listing all kinds of things. And do we know anything about whether they do in fact or did in fact list all kinds of things that the Federal Government didn't list and how any of this works? I'm just not... I don't have any specific information about what the status was for different states. I know I cited to the Pennsylvania Controlled Substances Act in a reply that numbers its schedules slightly differently versus a Class A. It's Class 1 through 4 or 5. And how does it, with the controlled substance, if we take the Federal definition, does that apply to anything on any schedule? So the position here is that regardless of the schedule, if you're looking at controlled substances within the federal sentencing guidelines, you need to look to the federal... I didn't know that. I'm trying to understand how that... The federal schedule, there's lots of them, right? There's Schedule C, Schedule... I don't know how many there are, different schedules. Different drugs are on different schedules. Yes. And all of those constitute controls? Our position would be that if it's regulated under the Controlled Substances Act, so under any of those schedules, that represents some degree of a federal assessment that that drug needs to be regulated. For safety, there are different scales to those various levels. So a Class A is going to be a much more substantial, much more dangerous substance than, say, a Class D. And that's roughly how it is in Massachusetts, too? Yes. So in Massachusetts, for example, heroin and fentanyl fall under Class A, while marijuana is a Class D, and some various psych medications would fall under Class E, and some more mild painkillers, with a judgment about the likelihood of abuse. Do we know how much deviation there is when we take everything into account as opposed to just cocaine and ibuprofen? From my... It might be some relevance in trying to get an understanding of what they meant by controlled substance. If the concern expressed in Kroko that, well, then states can just do anything they want, if, in fact, there was a high degree of deviation at the time in ways that might have been concerning, that seems to me to support somewhat the notion that, well, federal lawmakers, they probably wanted to go with the law they knew. But if there's a high degree of symmetry between the two, that maybe goes in the other direction. For the most part, from my experience at least, the state schedules have largely tracked the federal schedules. But looking prospectively, and especially with some recent changes, there have been more political drives to add certain substances to schedules that I think are contrary to the entire underlying purpose of this guideline, especially as the government has cited. The idea behind this... Recently, so I know the government has cited to xylosine, as recently added in Pennsylvania, which is widely recognized as being dangerous. That is typically a cutting agent in other substances and would, in a practical sense, be more likely charged with those substances. Louisiana, on the other hand, recently actually added mifepristone and misoprostol to their drug schedules as a class E substance. So someone could be convicted of trafficking, which ultimately could mean bringing a single dose of those medications into the state for a friend who can't access safe abortion services, get this conviction, and that would count against them to the same extent as a large quantity fentanyl trafficking conviction, if the government's definition is adopted. And that really reflects the importance of keeping or retaining the authority to both the Sentencing Commission and other federal lawmakers to decide what federal priorities are for both scheduling these drugs and deciding what conduct is the most serious. Counsel, can I just ask you to respond, though, to what the government argued in the previous case, which is that the circuit split on this issue, a lot of the cases on your side of the split, or the side that you're arguing for on behalf of your client, really weren't doing a textual analysis when they reached the conclusion that you want us to reach. So how do we take that into account? Because we look at the text, and it is clear that the Commission does cross-reference when it wants to cross-reference. And in 2023, it amended this particular provision and added a specific cross-reference to a federal statute. It did not. And the circuit split existed at the time. It didn't do anything to adopt the position that you're arguing for now. So given that we are supposed to start with the text, how can we get to where you want us to be? So whether it's framed as a function of the Jerome presumption or just looking at the broader function of the guidelines or sentencing law? The problem is we have to start with the text. So first we have to see if the text is actually unclear before any sort of presumption or rule of lenity or purpose, etc. So yes, context matters, but first we start with the text of the provision. So could you just respond, based on the text of this provision that we have to apply, why there's any ground for the outcome you are advocating for? So I think it does come down to, first, the government hasn't actually cited any other predicates or other guidelines or statutory that default to a state definition. And the amendment that's cited, removing those references, I don't think can be read as actually the commission entirely relinquishing its discretion and its authority over the definitions of these. They are criteria, but they still need to be federally defined. And unfortunately, this phrase, controlled substance, as the Supreme Court has now repeatedly acknowledged, albeit in declining to grant cert, is not clear and it leads to that confusion. And the dictionary definitions simply don't resolve the issue. What was the text in Jerome, I forget? What was the term that they were interpreting in Jerome? It was an immigration statute, I believe, if I'm recalling correctly. I know I looked at several pieces. No, but what was the phrase? Do you remember? I don't have that off the top of my head, unfortunately. When we go back to the text for B.1.2, B says a certain criteria and then it has two subsections that satisfy that criteria. One is the one we're dealing with, then the second is an offense described in and then there's a cross-reference to a specific statute. Does that suggest anything where there's no such cross-reference in one when they say a controlled substance and so we should read it generally rather than limited by some particular federal statute? I don't think we need to read the permission to rely on state definitions into that first section. And I think even the textual analysis, if we're looking at those two prongs, we can look to Section 1, which is the violent crime section, and see that that's another one where there are some cross-references for definitions but even with the generic offenses, we still look to a federal understanding of that generic offense. So even if they've removed those cross-references or chosen not to specifically and explicitly adopt a federal definition, the default needs to be looking at the federal statute or the federal definition. You say the right way under Jerome is effectively we reject the Apple analogy when we look at the term controlled substance because Jerome requires us to reject that. Whether it's Jerome or the broader purpose and context of the guidelines, I don't know that we need to reject. Well, I think if I'm following, the idea would be the cross-reference doesn't change anything if, as a premise, we start with when we confront a general phrase like controlled substance, we presume they met federal law. Then the cross-references don't indicate otherwise because they're just other cross-references to specific federal laws other than the federal law of controlled substance specifically. Right? That seems to be the logic of your position. To an extent, yes. But I guess what I'm having trouble with is what is the basis for thinking the phrase controlled substance should be presumed itself to be referring to federal law? Judge Kata's analogy, when normally we say Apple, that's all different varieties of it. So controlled substance, I look it up. Any substance that's controlled. In fact, this is controlled as a matter of state law. You're saying Jerome tells us or the purposes of the guidelines, which it's hard to see exactly where in the text of the guidelines or the history we get an answer either way on that. So what makes us think that when we confront those phrases we should start with the idea they must have met federal law? Well, controlled substance itself is a creation of law. It's not necessarily just a colloquial term unlike Apple. Doesn't that cut against you? Because as you've described, there were schedules. There were controlled substances under state law at the time that this guideline was created. So it just seems like you're in some way assuming the answer. The question is just when you use the phrase controlled substance, given that there are controlled substances under both federal law and state law, why should we conclude that they meant only the federal law version? Because the entire purpose of the guidelines themselves and the discretion afforded to the Commission was to create this kind of universal standard across the entire country for all federal courts. But why isn't the universal standard, as the government has argued, that you have violated a law that prohibits the manufacture, import, etc., so B1, by using a controlled substance? And if that's a controlled substance defined under state law, you've still committed that crime, and the purpose of this is a recidivist assessment, as the government has argued. Are you somebody who's a lawbreaker or not? So why isn't that the purpose of this guideline? What's problematic with that argument? Ultimately, that reading of the guideline creates more inconsistencies, and the question needs to be not how can we most universally punish the most conduct, but rather how can we provide certainty, fairness, and minimize disparities in sentencing? That was both in Section 991, creating the Commission, and in 994, setting out its purposes and duties. Allowing individual states' definitions to provide that definition ultimately means that different people are being held to different standards once they appear before the federal courts. But every individual defendant appearing before the federal courts needs to know exactly what standard they're being held to, and that needs to be consistently applied across every jurisdiction. Just to ask it another way, I understand your argument completely, but I think what the government is saying is that we just have to define the category differently. So in the government's view, the uniform federal standard is are you a lawbreaker or not for this type of manufacture, etc., of controlled substance? So you know if you have violated your own state's law, and therefore that's the uniform standard that applies to everyone, is you're somebody that has violated this type of law. That's the category as they've defined it. So why is that wrong? Well, actually, as the government has themselves argued, it isn't just this particular provision is not just looking at the fact that someone had violated the law previously. They're looking at the nature of that offense and assumptions made about the nature of that offense. The dangerousness that those prior convictions are supposed to represent is reflected in the same considerations that go into creating the federal schedule. The substances included in the Controlled Substances Act and added to the federal schedules represent the Attorney General's determination that these substances warrant regulation according to federal policies, federal practices, and federal concerns. Those same concerns underlying the kind of dangerousness of committing those particular offenses. And this is where I think the extreme example of the kind of political use of these schedules really kind of drives the point home, where it's really taking that out of the hands of federal regulators and lawmakers. Because as soon as a state changes their schedule, suddenly it gets worked into the definition of controlled substance without any way for the federal authorities to make a change unless the commission goes in and says, except for this particular substance. They would be kind of chasing that definition. As we've seen, the commission, despite multiple opinions or kind of references and suggestions from the Supreme Court, has not taken action to address this definition despite the circuit split, which after this court's decision will be a complete circuit split with every circuit weighing in. So I don't know that we can expect that the commission intended to have to chase that definition versus just leaving it to be federally defined to begin with. Thank you. Thank you. Thank you, Counsel. At this time, would Counsel for the Appellee please introduce herself on the record to begin? Good morning. Good morning. May it please the Court, Alexia DiMincentis for the government. We discussed in the last argument the fact of the cross-references that appear in this definition and throughout the guidelines, and I won't repeat the arguments here that I made there. But I do want to flesh out a bit this idea that we presume it is intentional when the commission decides not to have a cross-reference because the drafting history, in our view, confirms the intentionality of that decision not to. Can I back you up just one second? In Jerome, the phrase they were interpreting, I think I have it right, was in the federal bank statute for the crime if you enter a bank with the intention to commit any felony or larceny. Correct. But just using the Apple analogy, obviously a felony or larceny could be a state felony or a state larceny. And yet Jerome said we presume that that generic phrase, which just like controlled substance could equally be a state, was referring to federal felonies and a federal understanding of larceny. So why should it be any different here? I mean, I take the point that they then reference specific other provisions of federal law. But if we just start with Jerome, when we counter this phrase, is there any reason not to start with the idea they meant just like they meant federal felony even though they just said felony? They meant federal controlled substance offense even though they just said controlled substance. Well, I think critically the Supreme Court didn't just say, well, there's no reference to state offenses, so that's fine at the inquiry. What the Supreme Court did was examine the legislative history, the purpose of the statute, and look throughout all of those sources to determine whether there was some sort of indication that Congress is so clear here. In other words, I can't tell whether you're saying, therefore don't apply the presumption, or whether you're saying the presumption's overcome. Either way works for us, but I think fundamentally that the presumption is overcome. It might matter how much I have to be convinced. Well, we think that the presumption is overcome here. Then we need it to be pretty clear from these other indications, and I guess what is making that so clear? In our view, it is crystal clear from the fact that the commission did not include a cross-reference here. The drafting history, in our view, confirms that this was intentional if you look back at the 1980s. Suppose they had put in the specific reference in controlled substance offense to the schedule, the federal schedules, correct? Wouldn't they still have to have the cross-references that are included? I'm sorry, I'm not sure I follow the question. The cross-references are to other provisions that would not be covered even if they had included a specific reference to the federal controlled substances schedules, correct? Correct? If I'm understanding correctly, then yes. So then I don't understand how we can deduce all that much from the absence of the cross-reference to the specific provision about the schedules. Well, let me try to get at this from a slightly different angle. So if the Second Circuit is right about the way it is approaching the Jerome presumption, then the cross-references that appear in the INA and the ACCA, it was all superfluous. Congress didn't need to include those cross-references because we would just assume that it's the federal schedules. But we presume when we're interpreting statutes that each word is there for a reason. And when you apply that understanding of statutory construction, what that means is that absent the cross-reference, we're simply referring to controlled substances generally. And that, we believe, is the decision that the Commission made here. And I do want to point out the historical context here because there's a 2016 report from the Commission to Congress on the career offender enhancements, and they specifically state there that in enacting the 1989 amendments, they were specifically considering whether or not to adopt the recently amended definitions from the ACCA. They tellingly did adopt newly verbatim the definition of a crime of violence, but very conspicuously did not adopt the definition of serious drug offense from the ACCA. And in particular, did not adopt that cross-reference. So we believe that the history confirms what the text already suggests, which is that this was an intentional decision not to include a cross-reference. I'd also note that the 1980, the original version, the 1987 version and the 1988 version of the guidelines support that view because the Commission came in in 1988 and specifically said that although initially similar state offenses was defined to mean substantially equivalent state offenses, they corrected that in 1988 and said, no, actually, just substantially similar. So to our mind, the trajectory of these provisions underscores... Well, isn't that just to make crystal clear that it could be an offense under either state or federal law? It wasn't about the controlled substance question because I have those in front of me. And in 1987, it says, controlled substance offense, in quotes, meets any of the federal offenses identified in the statutes that are referenced or substantially equivalent state offenses. And then they said these offenses include manufacturing, distributing. And then all they do in 1989 is just make clear that it can be a state offense. It doesn't have anything to do with the phrase controlled substances. I read those amendments. Not controlled substances specifically, but I think what those amendments are indicating is that the Commission clearly was not intending for equivalence when they were effectively saying that when we're allowing for state offenses, we're allowing for substantially similar. And Judge Barron, to answer some of your questions about the historical context more broadly in terms of these controlled substances schedules, by 1988, I believe it was in 1970, that the legislation was put in place to adopt the scheduling system. And by 1988, something like 46 states had adopted some version of the Uniform Controlled Substances Act in some part. But it was understood in the adoption of the Uniform Controlled Substances Act by the states that the states then had the ability either to connect their schedules to the federal schedules or not. And in fact, it's very common that states get out ahead of some of these issues in terms of what qualifies as a controlled substance. And moreover... I just want to make sure I understand the cross-reference point. There are cross-references in the guideline itself, correct? Correct. Are you referring to those as the evidence, or are you referring to the fact that in ACCA or other things, there are cross-references to the schedules? Well, so both. We believe that the cross-references within the guidelines themselves, including in this very guideline... Those cross-references are to things other than the provision dealing with the schedules. So they'd have to be in there even if we read it your way. Well, understood. But I think that they are nonetheless demonstrating that when... Are there any instances of another guideline making a cross-reference to the schedules when referring to controlled substance? If I'm not mistaken, in 2D1.1, there is reference to the fact that for purposes of that guideline, they are using the schedule, but that makes perfect sense. In applying that schedule, what you are doing is determining whether a federal offense, which is necessarily linked... I think it would help you if there was another guideline that did specifically refer to the schedules. And 2D1.1 does, yes. 2D1.1 does? Yes, it does. So let me make sure I get your views on the mode of analysis that we should go through here. It seems we start with the text of the guideline. We look at it in context, and we ask, is it plain and unambiguous, meaning the way that you say it is? And if it is, you win. If it's plain and unambiguous the other way, you lose. If it's ambiguous, though, viewed in context, we then... It seems to me you then assume the burden under Jerome of showing that there's a plain indication elsewhere, outside that text, that the federal law only doesn't apply. What's wrong? Is that the proper mode of analysis, and you would simply say that there is a plain indication? Or do you say that that's not the right mode of analysis? In our opinion, there's nothing ambiguous here. When this Court applies ordinary canons of statutory construction to interpret the text of this guideline... You find no ambiguity in the text? No ambiguity. But if I did find ambiguity, do you then assume the burden of having to point to a plain indication? In some ways, the two questions somewhat collapse because in overcoming the Jerome presumption, we are looking to the very same indication for interpreting the guideline in the first instance. There's two different possible sources that you could be looking at, if I follow. But three, there's the text of just this provision. There's the text of the guidelines. And then there's these things like the drafting history, the purpose, all of that. So at step one, and I know there's no longer two steps in this world, but at step one, when we're trying to figure out if it's clear, I think Judge Codd is asking you, are you saying it's clear if I just look at the text of this provision? Well, yes, because controlled substance... And if we disagreed with you on that, you seem to be saying, but still before we get to the presumption even, we should be doing more looking to see if it's clear. Yeah, the Court should be... How much should we be looking at there? The drafting history, the purpose, the legislative history, all those types of things? I think the Court can draw on all of the tools that it normally has in its tool belt for interpreting words in a statute, or as here, a guideline. So that would include... And then what do we have to figure out? That it's clear at that point, or just that it's the best reading? That it's the best reading. But then what happened to the presumption? Well... The presumption will never come into play. Well, if that's how Your Honor views this, we would say it is clear. By employing these tools of construction, we have the fact that there is no cross-reference to the Controlled Substances Act. We have the historical context that shows that the non-inclusion of that cross-reference was intentional. And so when we take all of this into consideration, we believe the outcome is crystal clear under the text, and that is precisely why seven circuits have adopted this position. Thank you. Thank you. Thank you, Counsel. That concludes argument in this case.